## ELIJAH S. ALEXANDER

### *v.*

## DAVID F. RUNDLE.

1. TROVER — *when it lies.* To enable the payee of a promissory note to maintain trover against the maker of the same for its conversion, a wrongful taking of the note must be shown, or a refusal to deliver the same when demanded by the plaintiff.

2. Where the holder of a promissory note surrendered the same upon a dispute as to its consideration, and left the same with a depositary, and the maker took possession of the same without the consent of the depositor, but on complaint of the holder and at the request of the depositary, gave the same up to him for the payee, but again possessed himself of it, it appearing that the maker had reasonable ground to contest his liability in whole or in part: *Held,* that the payee could not maintain trover for the taking of the note under the circumstances.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an action of trover, brought by appellee, Rundle, against appellant, Alexander, in the circuit court of Cook county

for the alleged conversion of a promissory note for $7,000 made by Alexander, payable to Seymour and Rundle one year after date, and dated June 24, 1872.   The state of facts upon which the action arose is substantially as follows :

Seymour and Rundle, of Chicago, were interested with others in three several railroad contracts in Wisconsin, two of them for constructing portions of the Wisconsin Central Railroad; and the other one having been made with the Northwestern Railway Company.

The work under the contracts was in the course of execution, and the note in controversy, together with $6,000 in money, was given by Alexander in purchase of Rundle's interest in the contracts.   The negotiation took place in Chicago, where Alexander was living, and all his knowledge in relation to the contracts and the condition and value of Rundle's interest was derived from the representations made by Seymour & Rundle.   The latter, upon the conclusion of the purchase, at once dissolved their partnership and signed articles of dissolution, to which was appended a statement that the business of the firm would still be continued at 441 Wabash avenue, under the firm name of Mark T. Seymour & Co., composed of M. T. Seymour, Joseph O. Rutter, and appellant, Alexander.   On the 5th of July, 1872, Seymour, Rundle and Alexander left Chicago to go to the work.   Immediately after arriving at Stevens' Point, Wisconsin, where the head-quarters of the contractors for the work were, in view of the facts which existed there, Alexander demanded of Seymour and Rundle the return of his money and the note he had given, claiming that he had been deceived, and that misrepresentations had been made to him as to the condition of affairs.   Seymour and Rundle deferred any action upon the subject until they should get back to Chicago.   After their arrival back to Chicago, Alexander applied to one Howard for his aid in the matter, Howard having had at one time some negotiation himself with Seymour and Rundle for the purchase of the same interest, and having been instrumental in getting Alexander into the purchase, by first bringing the subject to his notice.   After

some previous meetings, Seymour, Rundle, Alexander and Howard met for the last time in regard to the matter July 18, 1872, at the office, 441 Wabash avenue. In the course of the interview Rundle became offended on account of charges made by Alexander, and went away, leaving the note with Seymour, and telling him to do what he had a mind to with it. The result was that the note was placed in an envelope and deposited in a drawer in the safe there, and Alexander was furnished with a key to the drawer. As to the terms and conditions upon which the note was thus deposited, the witnesses do not agree precisely. Afterward, in the absence of all the inmates of the office except a colored boy, Rundle got access to the safe, procured a locksmith to fit a key to the drawer, opened it, and abstracted the note. On its coming to the knowledge of Alexander, he threatened to take legal proceedings against Rundle, when Seymour, on the 14th of September, 1872, offered to go and see Rundle at the Tremont House, and endeavor to obtain the note from him. He did so, and afterward, on the same day, wrote a letter from the Tremont House to Alexander, informing him that he had obtained the note, and if he did not see Alexander to give him the note before four o'clock P. M. of that day, Alexander would find the note in the safe, at 441 Wabash avenue.

Alexander waited for Seymour until after four o'clock, when the latter not coming, Alexander, the same afternoon, went to 441 Wabash avenue, and upon his entering — as he testifies, without contradiction — the book-keeper informed him his note was there, and stepped to the safe and handed the note to him. For this taking of the note, and a refusal to deliver the same to Rundle on his demand of it, this action was brought by Rundle, and resulted in a verdict and judgment in his favor for $3,757.39.

Alexander appealed from the judgment.

Messrs. SLEEPER & WHITON, for the appellant.

Mr. GEO. C. BELLOWS, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

We fail to perceive, from the evidence, that Rundle has here any cause of action in trover.

To maintain the action under the circumstances disclosed, there must have been a wrongful taking of the note by Alexander, or a wrongful refusal to deliver it to Rundle when demanded by the latter.

Taking the testimony of Alexander and Howard, there was a virtual surrender of the note to Alexander, but it was left to be deposited in the safe, so that if there should turn out to be an ultimate profit on the contracts, Alexander would pay that much of the note. And although the testimony of Seymour does not go to that extent, yet, taken in connection with his acts and statements, it does not detract from the force of Alexander's and Howard's testimony to the effect that the note was to remain deposited in the safe without any right of possession of it by Rundle while there. On Seymour being informed that Rundle had taken the note, he observed, as he himself testifies, to Alexander, that Rundle had no more right to take the note than he had to take Alexander's horse from his barn. This forcibly declared Seymour's understanding of the arrangement to have been that Rundle had no present right of possession of the note. Immediately upon Seymour's getting back the possession of the note from Rundle at the Tremont House, he despatched to Alexander a letter informing him of the fact, and that if he did not see Alexander to give him the note before four o'clock of that afternoon, he would find it in the safe at 441 Wabash avenue. This recognized Alexander's right to the possession of the note, and signified to him that if Seymour met him before the time named, he would give to Alexander the note, and that if he did not so meet him, Alexander would find the note in the safe where he could get it. For, although the direction was not expressed in terms, that he could go and get the note from

the safe, it was implied from the language that he would find the note in the safe. This, we think, in connection with the other language of the letter, was but the fair reading of it, and that Seymour's whole connection with the note sufficiently evidenced that the letter was by authority from Rundle. Alexander's going under such circumstances and getting the note as he did, we do not think is to be regarded as an unlawful taking of the note.

Even if the retention of the possession of the note by Alexander was contrary to the conditions upon which the note was originally deposited in the safe, we cannot think that the refusal to comply with the demand of Rundle to deliver the note to him, was wrongful. There can be no doubt that Alexander had reasonable ground to contest his liability, in whole, or in part, upon the note. The verdict of the jury, it being for only about one-half of the amount of the note, indicates this. The note having a year to run before maturity, it was the purpose of Alexander to secure himself against liability on the note. After several meetings of the parties to that end, the final result at their last meeting was, that the note should be deposited in the safe as before-named. For aught that appears, this was an arrangement entirely satisfactory to Alexander. In view of the whole evidence, the conclusion must be, that this was done in protection of the rights of Alexander; that the right of possession of the note was withdrawn from Rundle; that Alexander was entitled to rely upon the arrangement as a protection against a transfer of the note by Rundle to an innocent purchaser before maturity; and that in such reliance, Alexander may well have forborne to take steps, which he otherwise might have taken, to enjoin any transfer of the note before maturity. The time of Rundle's demand of the note, as also that of the commencement of the suit, was some considerable time before the maturity of the note. To hold that Rundle's demand of the note was rightful, and Alexander's refusal to deliver it to Rundle was wrongful, would be to admit the latter's then right of possession of the note, and that the note should have been delivered to

12—75TH ILL.

him, whereby, had that been done, he would have had the power and opportunity to transfer the note before maturity and thereby cut off the defense of Alexander to the note. This would have been in defeat, as we must regard it, of the contrary express arrangement which had been had between the parties which resulted in the depositing of the note in the safe to be there kept. If there was any one at that time, the time of Rundle's demand, entitled to demand the possession of the note from Alexander, it was Seymour, and not Rundle. To maintain trover by Rundle, he must have had a right to the present possession of the note. 2 Greenl. Ev. secs. 636, 640; *Bloxam* v. *Sanders*, 10 Eng. Com. Law, 868.

So far as appears, Seymour acquiesced in the possession of the note by Alexander, and never demanded it from him. Rundle knew of Alexander having the note in a few days after his taking it, September 14th, but made no demand of the note from Alexander until in the winter after.

Finding that there was neither a wrongful taking of the note, nor a wrongful refusal to deliver up the possession of it to Rundle on his demand, we do not see that there was any cause of action in trover in Rundle, and the judgment must be reversed.

Appellant will have judgment here for his costs in the court below, as well as in this court.

*Judgment reversed.*